1   Kurt F. Vote, # 160496
    McCormick, Barstow, Sheppard,                    (SPACE BELOW FOR FILING STAMP ONLY)
2   Wayte & Carruth LLP
    P.O. Box 28912
3   5 River Park Place East
    Fresno, CA  93720-1501
4   Telephone:    (559) 433-1300
    Facsimile:    (559) 433-2300
5
    Attorneys for Petitioner
6   KIM-C1

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  KIM-C1, a California                    Case No.  1:10-CV-00591 AWI DLB
    limited liability company,
12                                          **OPPOSITION TO MOTION TO VACATE
                 Petitioner,                ARBITRATION AWARD**
13
    v.                                      Hearing:
14
    VALENT BIOSCIENCES                      Date:     July 26, 2010
15  CORPORATION, INC., an Illinois          Time:     1:30 p.m.
    corporation,                            Ctrm:     2 (Chief Judge Ishii)
16
                 Respondent.
17

18

19          Petitioner KIM-C1, LLC, a California limited liability company (hereinafter

20  "Petitioner"), hereby submits the following Opposition to the Motion to Vacate Arbitration

21  Award filed by Respondent VALENT BIOSCIENCES CORPORATION, INC., an Illinois

    corporation ("Respondent").
22

23

24

25

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 2

II. RELEVANT PROCEDURAL HISTORY ........................................................... 3

III. LAW AND ARGUMENT ................................................................................... 6

A.  Standards Applicable to Respondent's Motion ......................................... 6

B.  The Parties Agreed to a Baseball-Style Arbitration And The Final Award
    Was Rendered In Conformity Therewith; Therefore, The Arbitrator Did
    Not Exceed His Authority In Adopting The Challenged Rulings .............. 7

C.  The Scope Of Review Of The Final Award Is Limited, And Cannot Be
    Vacated In This Case ................................................................................. 9

    1.  The Final Award Cannot be Overturned Under the Federal
        Arbitration Act ............................................................................ 10

    2.  The Final Award Cannot be Overturned Under the Illinois Uniform
        Arbitration Act ............................................................................ 11

    3.  The Final Award Cannot be Overturned Pursuant to the Parties'
        Own Agreement ........................................................................... 13

D.  Even If The Arbitrator's Award Could Be Reviewed On the Merits, The
    Arbitrator Made A Fair Interpretation of the Agreement And Did Not Act
    Without A Reasonable Basis ..................................................................... 14

    1.  Respondent Cannot Challenge the Arbitrator's Decision to Require
        Respondent to Purchase the Minimum Requirement or Terminate
        the Agreement ............................................................................. 14

    2.  Even if Respondent Could Properly Challenge Ruling 2 of the Final
        Award, The Arbitrator Made A Reasonable And Rational
        Interpretation of the Agreement. ................................................. 15

    3.  Ruling 2 Is Not Facially Contradictory to Ruling 1 ................... 17

    4.  Ruling 2 Is Not Irreconcilable with "Undisputed Facts" And Prior
        Admissions are Not a Basis for Vacating an Arbitration Award. ... 18

    5.  The Arbitrator's Decision Regarding the Purchase Price of CPPU is
        also Inherently Fair and Reasonable .......................................... 19

E.  Petitioner Remains The Prevailing Party And Is Entitled To An Award Of
    Attorney's Fees & Costs ........................................................................... 22

IV. CONCLUSION ................................................................................................. 23

i

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Postal Workers Union v. United States Postal Serv.*, 682 F.2d 1280..........................18

*Association of Cleveland Fire Fighters v. City of Cleveland*, 2004 WL 1532573 ........................9

*Canteen Corp. v. Former Foods, Inc.*, 238 Ill.App.3d 167.....................................................12, 13

*Collins v. Hurst*,  316 Ill.App.3d 171 .............................................................................................22

*Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128 ..............................................................18

*Cypress Equip. Fund v. Royal Equip.*, 1997 U.S. Dist. LEXIS 14069 .........................................10

*Employers Ins. v. National Union Fire Ins.*, 933 F.2d 1481 ..........................................................10

*French v. Merrill Lynch, Pierce, Fenner & Smith*, 784 F.2d 902...................................................10

*Galasso v. KNS Cos., Inc.*, 364 Ill. App. 3d 124 ...........................................................6, 13, 18, 21

*Ganton Techs., Inc. v. U.A.W., Local 627* ........................................................................................6

*Generica Limited v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123 ................................................11

*Hawrelak v. Marine Bank, Springfield*, 316 Ill.App.3d 175 ...............................................11, 12, 13

*Hayes v. Ennis*, 278 Ill. App. 3d 121 ..............................................................................................17

*Int'l Ass'n of Firefighters, Local No. 37 v. City of Springfield*, 378 Ill. App. 3d 1078 ........6, 11, 12

*Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31 ...................................13

*Premier Title Co. v. Donahue*, 328 Ill.App.3d 161.....................................................13, 14, 27

*Quick & Reilly, Inc. v. Zielinski*, 306 Ill.App.3d 93 .......................................................................12

*Rauh v. Rockford Prod. Corp.*, 143 Ill.2d 377 ...................................................................13, 16, 17

*Tim Huey Corp. v. Global Boiler & Mech., Inc.*, 272 Ill.App.3d 100 ...............................12, 18, 19

*U.S. Steel Mining Co., L.L.C. v. Wilson Downhole Servs.*, 2006 WL 2869535 ........................7, 8

*Widell v. Wolf*, 43 F.3d 1150.........................................................................................................11

*Yorulmazoglu v. Lake Forest Hosp.*, 359 Ill. App. 3d 554 .............................................................6

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

# I.
## INTRODUCTION

Respondent, dissatisfied with an arbitrator's award, filed its Motion to Vacate, seeking to re-litigate matters which have already been decided by what the parties previously agreed was binding, non-reviewable, and non-appealable contractual arbitration.  Respondent argues that the arbitrator exceeded his authority and incorrectly found in favor of Petitioner on five (5) out of six (6) of his rulings.  (Doc. # 35, 11-19.) However, a losing party's difference of opinion with the arbitrator "does not constitute sufficient grounds for overturning the decision rendered by an arbitrator"  *U.S. Steel Mining Co., L.L.C. v. Wilson Downhole Servs.*, 2006 WL 2869535, 4 (W.D. Penn. Oct. 5, 2006) [construing the Federal Arbitration Act]; and Respondent has failed to meet the extraordinarily high burden required to vacate an arbitration award under the Federal Arbitration Act; the Illinois Uniform Arbitration Act; and/or the parties' written agreement – which does not permit review of the award at issue.

Moreover, Respondent's Motion fails to acknowledge and/or address the fact that, pursuant to the parties' agreement, the arbitrator, Michael Roberts (the "Arbitrator"), was bound by the rules of a "baseball-style" arbitration, whereby the Arbitrator was permitted only to adopt either party's proposed ruling, in its entirety and without comment, on an issue-by-issue basis.  Accordingly, the scope of the Arbitrator's authority was significantly constrained by the arbitration procedure itself and the Arbitrator did not exceed that authority in issuing the Award because he adopted a ruling proposed by one or the other party in its entirety.

Furthermore, with respect to Respondent's objection to the Arbitrator's ruling that Respondent must either purchase the minimum quantities set forth in the parties' agreement or terminate the agreement (Ruling 2), Respondent waived its right to challenge this ruling by failing to challenge and/or seek to vacate the identical ruling which was issued by the Arbitrator in a prior proceeding in 2008.

Moreover, even if the foregoing were not the case, which it is, the Final Award is inherently fair, reasonable and rational.  Therefore, the Arbitrator did not act without a reasonable and rational basis, and his rulings should be upheld under the exacting standard required for the

2

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1   review of an arbitration award.   As such, Petitioner respectfully requests that Respondent's

2   Motion to Vacate the Arbitration Award be denied, in its entirety, and that this Court confirm the

3   Arbitrator's Final Award.   Petitioner also requests that it be awarded its attorney's fees and costs

4   incurred subsequent to entry of the Final Award, with said fees and costs to be awarded by way of

5   a subsequent Motion for Attorney's Fees.

6

7                                                     **II.**

8                              **RELEVANT PROCEDURAL HISTORY**

9            This case arises out of an agreement for the purchase of certain minimum

10  quantities of a unique product, CPPU, one of the most powerful and versatile plant growth

11  regulators available anywhere in the world.

12          Specifically, on or about July 9, 1999, Petitioner and Respondent's predecessor in

13  interest, Abbott Laboratories, Inc., entered into a Revised Commercial License, Development,

14  and Supply Agreement (the "Agreement") for CPPU.   (See Exhibit "A" to Declaration of Kurt F.

15  Vote ("Vote Decl.").)   Thereafter, Respondent subsequently succeeded to the rights and

16  obligations of its predecessor under the Agreement.   This Agreement, as amended by the parties,

17  specifically provided, among other things, that Respondent was to purchase from Petitioner

18  certain minimum annual quantities of CPPU, and that, should Respondent do so, Respondent

19  would be the exclusive distributor of CPPU in the United States.   (See Exhibit "A" to Vote Decl.,

20  § 2.2.)   However, if Respondent failed to so, the Agreement would become non-exclusive.   (*Id.*)

21  Although detailed and extensive provisions were made in the Agreement for each party's duties

22  and obligations (including pricing, etc.) while the parties' relationship was exclusive, no such

23  provisions were made in the event that the relationship became non-exclusive.   (See Exhibit "A"

24  to Vote Decl., p. 6-7; see also Exhibit "C" to Vote Decl., 304:21-305:9.).

25          Moreover, the Agreement provided, at Paragraph 21.4 and Exhibit 5.0 to the same,

26  that any and all controversies arising between the parties, out of or related to the Agreement, were

27  to be submitted to binding arbitration; and the parties further agreed to participate in a "baseball-

28  style" arbitration.   (See Exhibit "A" to Vote Decl., Ex. 5.0 at p. 34.) According to this unique

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

3

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1    method of arbitration, the parties agreed to submit a proposed "final ruling" to the arbitrator on

2    every issue in dispute, and the arbitrator was then required to review the proposed rulings and

3    adopt, in its entirety, one of the parties proposed rulings on each disputed issue. (Exhibit "A" to

4    Vote Decl., 35, ¶¶ 4(c) and 7.) Additionally, the parties' Agreement provided that "[t]he rulings

5    of the neutral [arbitrator] and the allocation of fees and expenses shall be binding, non-

6    reviewable, and non-appealable and may be entered as a final judgment in any court having

7    jurisdiction." (See Exhibit "A" to Vote Decl., Exhibit 5.0,¶ 9.)

8              In 2007, a number of disputes subject to the arbitration provisions of the

9    Agreement arose between the parties, and the parties submitted their disputes to arbitration with

10   the Arbitrator, in California, pursuant to the Agreement.  Following a hearing on the disputes

11   existing between the parties, on or about March 28, 2008, the Arbitrator issued an award

12   (hereinafter the "March, 2008 Award"), ruling (1) that Respondent was required to purchase

13   120,000 grams of CPPU from Petitioner during the period of July 9, 2007 and July 8, 2008, as

14   well as another 120,000 grams during the period of July 9, 2008 and July 9, 2009; (2) that

15   Respondent was required to either purchase these quantities or terminate the Agreement for lack

16   of Commercial Viability; and (3) that the transfer price for the purchase of CPPU was to be set

17   according to a formula contained within the Agreement. (Vote Decl., Exhibit "B.") Additionally,

18   in the March, 2008 Award, the Arbitrator retained jurisdiction to enforce or effectuate the Award.

19   (Vote Decl., Exhibit "B," 11:17-11:22)  At no time did Respondent challenge the Arbitrator's

20   March, 2008 decision requiring Respondent to elect to purchase those minimum quantities of

21   CPPU specified in the Agreement or terminate the Agreement. (Vote Decl., ¶ 7.)

22             However, Respondent subsequently failed to comply with the terms of the March,

23   2008 Award, and on or about October 20, 2009, a series of disputes arose between the parties due

24   to Respondent's failure to purchases the minimum quantities of CPPU specified in the

25   Agreement, and Respondent's refusal to confirm that it would purchase the minimum annual

26   quantities in the future or terminate the Agreement.

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

4

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1        Additionally, a dispute arose as to the appropriate purchase price for the quantities

2  of CPPU purchased pursuant to the terms of the Award.  Specifically, Respondent contended that

3  the appropriate purchase price, for those quantities of CPPU purchased in 2008, should have been

4  the $3.80 per gram it paid, while Petitioner contended that the purchase price should have been

5  $8.83 per gram.  Likewise, Respondent contended that appropriate purchase price, for those

6  quantities purchased in 2009, should have been the $3.85 per gram it paid, while Petitioner

7  contended that the purchase price should be $9.34 per gram.  (See Exhibit "C" to the Declaration

8  of Daniel E. Johnson.)

9        Despite these disputes, Petitioner dutifully shipped the amounts ordered, and in or

10  about January of 2010, the parties once again submitted their issues to arbitration with the

11  Arbitrator for resolution pursuant to the Agreement.  The Arbitrator held hearings, in California,

12  on those above-described issues on January 5 and 6, 2010.

13        After the hearing of evidence and the attendance of both parties at these hearings,

14  the Arbitrator made an award in writing.  While an interim award was provided to the parties on

15  or about January 29, 2010, the Arbitrator's Final Award was not issued until March 30, 2010 (the

16  "Final Award").  This Final Award provided: (1) that Respondent did not breach the Agreement

17  in deciding, in 2008 and 2009, not to purchase the minimum quantities of CPPU specified in the

18  Agreement; (2) that Respondent was required to either purchase the minimum quantities specified

19  in the Agreement going forward or terminate the Agreement for lack of Commercial Viability; (3)

20  that the correct purchase price for those quantities of CPPU purchased by Respondent in 2008

21  was $8.83 per gram; (4) that the correct purchase price for those quantities of CPPU purchased by

22  Respondent in 2009 was $9.34 per gram; and (5)/(6) that Petitioner was the prevailing party in the

23  arbitration and therefore entitled to $25,542.05 in reasonable attorney's fees and costs incurred in

24  the arbitration.  (See Exhibit "D" to Vote Decl., p. 6-8.)

25        On or about March 22, 2010, Respondent filed a Complaint, seeking to vacate the

26  Final Award, in the Circuit Court of Cook County, Illinois, County Department, Chancery

27  Division (Case No. 10 CH 11794), and subsequently filed an Amended Complaint, as well as its

28  Motion to Vacate Arbitration Award in the same court.  (Vote Decl., ¶12.)  On or about June 23,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

5

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1   2010, the Circuit Court of Cook County, Illinois granted Petitioner's Motion to Dismiss for lack

2   of subject matter jurisdiction and dismissed Respondent's Illinois suit.  (Vote Decl., ¶ 13.)

3   In the meantime, on March 31, 2010, Petitioner filed a Petition to Confirm the

4   Arbitration Award with the United States District Court for the Eastern District of California

5   (Doc. #1), and subsequently filed its Amended Petition to Confirm Arbitration Award on June 7,

6   2010 (Doc. #10).  (Vote Decl., ¶ 14.)  Respondent's Motion must be denied as the parties agreed

7   to a "baseball style" arbitration and the Final Award represents exactly the type of award to which

8   the parties agreed; the scope of review of the Final Award is limited; and the Arbitrator's Final

9   Award was reasonably and rationally made

10                          .

11                                          **III.**
                                **LAW AND ARGUMENT**

12

13   A.      <u>**Standards Applicable to Respondent's Motion.**</u>

14          Pursuant to the parties' Agreement, Illinois law is to be applied to any and all

15   issues arising out of the Agreement.  (Exhibit "A" to Vote Decl., ¶21.3.)  Under both Illinois law

16   and the Federal Arbitration Act, judicial review of an arbitration is extremely limited.   See

17   *Ganton Techs., Inc. v. U.A.W., Local 627,* 358 F.3d 459, 462 (7th Cir. 2004); *Int'l Ass'n of*

18   *Firefighters, Local No. 37 v. City of Springfield,* 378 Ill. App. 3d 1078, 1081 (Ill. App. Ct. 4th

19   Dist. 2008).  In fact, Illinois law provides that an arbitration award shall not be disturbed except

20   under "extraordinary circumstances."  *Yorulmazoglu v. Lake Forest Hosp.,* 359 Ill. App. 3d 554,

21   564 (1st Dist. 2005).  Thus, courts are to presume that an arbitrator did not exceed his authority

22   and must, if at all possible, construe an award to uphold its validity.  *Galasso v. KNS Cos., Inc.,*

23   364 Ill. App. 3d 124, 130 (1st Dist. 2006).  Therefore, an award may not be vacated on account of

24   "errors in judgment or mistakes of fact or law," but only where the arbitrator's ruling amounted to

25   a "gross error of law or fact."  *Galasso, supra,* 364 Ill. App. 3d at 131.

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

6
OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1      **B.**     <u>**The Parties Agreed to a Baseball-Style Arbitration And The Final Award**</u>
           <u>**Was Rendered In Conformity Therewith; Therefore, The Arbitrator Did Not**</u>
2            <u>**Exceed His Authority In Adopting The Challenged Rulings.**</u>

3         Respondent's Motion attacks the Arbitrator's second, third, fourth, fifth and sixth

4 rulings, arguing that these rulings exceeded the Arbitrator's scope of authority as contradictory to

5 the language of the parties' Agreement, the terms of the March, 2008 Award and inconsistent.

6 However, any such argument is of no avail as the parties agreed to participate in a "baseball-

7 style" arbitration, and the Arbitration complied with his prescribed authority thereunder.

8         Specifically, according to the parties' Agreement the parties were required to

9 submit any and all disputes arising under the Agreement to binding arbitration, and in doing so,

10 were require to submitted a "proposed ruling on each issue to be resolved." (See Exhibit "A" to

11 Vote Decl., Ex. 5.0 at p. 34, ¶4(c).) Thereafter, under this unique method of arbitration, the

12 Arbitrator was required to review the proposed rulings and "adopt in its entirety the proposed

13 ruling and remedy of one of the parties on each disputed issue." (*Id.* at 35, ¶7.)

14         The Arbitrator could not compromise between the parties' positions nor "issue any

15 written opinion or otherwise explain the basis of the ruling." (*Id.*) Rather, the arbitrator was

16 strictly limited to choosing one side or the other on each issue. (*Id.*)

17         When reviewing a baseball-style arbitration, the court must consider the propriety

18 of the award in the context of the arbitration itself. *U.S. Steel Mining Co., L.L.C. v. Wilson*

19 *Downhole Servs.*, 2006 WL 2869535, 1 (W.D. Penn. Oct. 5, 2006). Notably, the facts before the

20 court in *Wilson Downhole*, *supra*, are instructive in this case. In *Wilson Downhole*, *supra*, the

21 parties to a "baseball-style" arbitration submitted two (2) proposed final rulings and the arbitrator

22 chose one over the other. Although the arbitrator noted that he might have reached a different

23 conclusion had he been granted the freedom to draft his own decision, he adhered to the

24 procedural requirements of the baseball-style arbitration. *Id.* at 2. The losing party then appealed

25 the arbitrator's award, arguing that the arbitrator's decision was "manifestly irrational and

26 prejudicial." *Id.* However, the court in *Wilson Downhole*, *supra*, reminded the moving party that

27 it "seemed to overlook the parties' express agreement to resolution of t[he] matter by baseball

28 arbitration." *Id.* at 4. The court then denied the moving party's motion to vacate, finding that the

7

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

arbitrator had not exceeded his "very proscribed authority" in reaching his decision, and concluding that the losing party simply had a "difference of opinion with the Arbitrator, which does not constitute sufficient grounds for overturning the decision rendered by an arbitrator." *Id.*

In this case, like the parties in *Wilson Downhole, supra,* Respondent and Petitioner specifically agreed to arbitrate any and all disputes arising under the Agreement through the use of a "baseball-style" arbitration. Consequently, under the terms of the parties' Agreement, as set forth in more detail above, the Arbitrator was required to choose between the two (2) rulings submitted by the parties on each disputed issue in formulating his award. (See Exhibit "A" to Vote Decl., Ex. 5.0 at p. 34, ¶7.) The Arbitrator could not compromise between the parties' positions nor "issue any written opinion or otherwise explain the basis of the ruling." (*Id.*) Rather, as the Arbitrator, himself, described to the parties at the January 6, 2010 hearing,

> The ADR provision basically requires me as the arbitrator to make the ruling that is kind of closest to the right ruling, although it may not be the right ruling, because the other side's proposed ruling is even worse.
>
> I kind of liken it to having to sign a bill as president where there's a bunch of earmarks on it. It might have a lot of good substance, but those earmarks that are added are terrible, but your choices dumping the entire bill or accepting it as it is.
>
> And so this ADR provision requires me to accept the good, bad, both, in adopting one side or the other's rulings.

(Exhibit "C" to Vote Decl., 299:13-300:3.) And that is exactly what the Arbitrator did in this case when he chose between the two (2) proposed rulings submitted by the parties on each dispute in coming to his decision.

For instance, on Ruling 2, under the terms of the parties' Agreement, the Arbitrator was required to choose between the following two proposed rulings: (1) The proposed ruling of Respondent which provided "No. While VBC could have elected to purchase the 'minimum quantities' set forth in the prior Award, or to terminate the Agreement, VBC also could elect to become a non-exclusive seller of CPPU. VBC elected to become a non-exclusive seller of CPPU under the Agreement" (Exhibit "E" to Vote Decl., 1:19-1:21); or (2) The proposed ruling of Petitioner which provided as follows:

8

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 River Park Place East
Fresno, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

> The original Award, at page 10, lines 22-25, required Respondent to elect to proceed under the Agreement and purchase the minimum annual quantities required going forward, or terminate the Agreement for lack of Commercial Viability. Respondent has to date failed to purchase the minimum annual quantities required but has not terminated the Agreement for lack of Commercial Viability. Respondent shall make the election required by the original Award within 30 days and notify Claimant in writing as to whether Respondent will either (1) proceed under the Agreement and purchase the minimum annual quantities required going forward or (2) terminate the Agreement for lack of Commercial Viability, with said termination occurring at the time said notice is given.

(Exhibit "F" to Vote Decl., 3:6-3:10)

In accordance with the parties' Agreement, the Arbitrator adopted Petitioner's proposed ruling, verbatim, without comment or explanation. (Exhibit "D" to Vote Decl., 6:23-7:10.) The same is true for Rulings 3, 4, 5 and 6. (See Exhibits "E," "F" and "D" to Vote Decl.) Therefore, while Respondent contends that the Arbitrator exceeded his authority and "ignores" the plain language of the contract in formulating the Final Award, it is Respondent who ignores the plain language of the parties' Agreement and the basic structure and operation of the baseball-style arbitration. In fact, had the Arbitrator opted for the course of action lobbied for by Respondent, and adopted a ruling outside of the proposed rulings submitted by the parties, he would undoubtedly have overstepped his authority. See e.g., *Association of Cleveland Fire Fighters v. City of Cleveland*, 2004 WL 1532573, at *2 (Ohio Ct. App. July 8, 2004). As such, the Arbitrator did not exceed his authority in issuing Rulings 2, 3, 4, 5 or 6 of the Final Award, and Respondent's Motion should be denied in its entirety.

**C.    The Scope Of Review Of The Final Award Is Limited, And Cannot Be Vacated In This Case.**

Even if the foregoing were not the case, which it is, the scope of review applicable to Respondent's Motion to Vacate is limited and, as set forth below, the Final Award cannot be overturned pursuant to (1) the Federal Arbitration Act (the "FAA"); (2) the Illinois Uniform Arbitration Act; or (3) the parties' Agreement.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1.   *The Final Award Cannot be Overturned Under the Federal Arbitration Act.*

The FAA provides for a limited scope of review for the Final Award.  In fact, 9 U.S.C. § 9 provides that review of an arbitration decision is meant to be summary, with the court required to grant an order confirming an arbitration award unless the award is vacated modified or corrected pursuant to 9 U.S.C. §§ 10 or 11.  9 U.S.C. § 9.

Section 10 of Title 9 to the United States Code provides the limited grounds upon which an award can be vacated under the FAA, providing "that the Court may vacate an arbitration award where the award was procured by corruption, fraud, or undue means, or where the arbitrator (1) acted with evident partiality or corruption, (2) was guilty of prejudicial misconduct, or (3) exceeded its powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Cypress Equip. Fund v. Royal Equip.*, 1997 U.S. Dist. LEXIS 14069 (N.D. Cal. Jan. 13, 1997); 9 U.S.C. § 10.

In this case, Respondent does not contend that the Final Award was procured by corruption, fraud or undue means, and there is no allegation of any partiality or prejudicial misconduct.  Rather, Respondent merely argues that the Arbitrator's Final Award is illogical and inconsistent, and attempts to bootstrap these arguments into a claim that the Arbitrator exceeded his authority.  However, as set forth in detail above, any argument that the Arbitrator exceed his authority is of no avail as the Arbitrator complied with the authority granted to him under the parties' Agreement and participation in a "baseball-style" arbitration.

Moreover, under the FAA, the fact that an award is inconsistent or illogical is insufficient to vacate an award.  In fact, the Ninth Circuit has held that a court may not reverse an arbitration award even on the grounds that the arbitrator's finding of facts and/or conclusions of law were erroneous.  *Employers Ins. v. National Union Fire Ins.*, 933 F.2d 1481, 1486 (9th Cir. 1991).  Rather, "[a]n arbitrator's decision must be upheld unless it is completely irrational, or constitutes a manifest disregard of the law." *French v. Merrill Lynch, Pierce, Fenner & Smith*, 784 F.2d 902, 906 (9th Cir. 1986).

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1    Here, as set forth in detail below, the Arbitrator's rulings were reasonably and

2  rationally made, and Illinois law applying the FAA provides that "when the parties agree to have

3  their disputes settled by an arbitrator, they also agree to accept the arbitrator's view of the facts

4  and of the meaning of the contract." *Generica Limited v. Pharmaceutical Basics, Inc.*, 125 F.3d

5  1123, 1129 (7th Cir. 1997) [applying the FAA] (internal citation omitted).    Consequently,

6  "arbitrators' errors -- even clear or gross errors -- do not authorize courts to annul awards." *Widell*

7  *v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994) [applying the FAA] (internal citation omitted).  As

8  such, Respondent's contentions that Rulings 2, 3, 4, 5 and 6 of the Final Award are inconsistent

9  and/or illogical are insufficient to vacate an award.  Accordingly, Petitioner respectfully requests

10  that this Court deny Respondent's Motion and grant its Petition in its entirety.

11       2.    *The Final Award Cannot be Overturned Under the Illinois Uniform*
            *Arbitration Act.*

12
      Illinois law provides that the "scope of judicial review of an arbitration award is

13
   nothing like the scope of an appellate court's review of a trial court's decision because the

14
   Uniform Arbitration Act (710 ILCS 5/12, 13) provides for limited judicial review of the

15
   arbitrator's award." *Int'l Ass'n of Firefighters, Local No. 37 v. City of Springfield,* 378 Ill. App. 3d

16
   1078, 1081 (Ill. App. Ct. 4th Dist. 2008) (citing *Hawrelak v. Marine Bank, Springfield,* 316

17
   Ill.App.3d 175, 178 (2000)).    In fact, pursuant to the provisions of the Illinois Uniform

18
   Arbitration Act, a court may vacate an arbitrator's award only:

19
        (1) if the award was procured by corruption, fraud, or other undue
20        means;

21        (2) if there was evident partiality or corruption by the arbitrator or
         misconduct that prejudiced any party;
22
         (3) if the arbitrator exceeded his power;
23
         (4) if the arbitrator refused to postpone a hearing upon sufficient
24        cause or declined to hear material evidence, so as to prejudice
         substantially the rights of a party; or
25
         (5) if there was no arbitration agreement, the issue was not
26        adversely determined, and the party did not participate in the
         arbitration hearing.
27

28  (710 ILCS 5/12; *Hawrelak, supra,* 316 Ill. App. 3d at 179; *Int'l Ass'n of Firefighters, supra,* 378
   Ill.App.3d at 1081.)                             11

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

Here, there is no allegation that the Final Award was the product of any corruption, fraud or undue means, or any allegation of partiality or prejudicial misconduct. Likewise, there is no argument the Arbitrator refused to postpone a hearing or declined to hear material evidence, so as to substantially prejudice the rights of any party.   Nor is there any contention that no arbitration agreement was in place; that the issues were not adversely determined; or that any party did not participate in the arbitration hearing.  Rather, Respondent merely argues that Rulings 2, 3, 4, 5 and 6 of the Arbitrator's Final Award are illogical and inconsistent,[1] and attempts to bootstrap these arguments into a claim that the Arbitrator exceeded his authority.  However, as set forth in detail above, any argument that the Arbitrator exceeded his authority is of no avail as the Arbitrator did not exceed the authority granted to him under the parties' Agreement and participation in a "baseball-style" arbitration.

Moreover, Respondent's arguments are insufficient to vacate the Final Award pursuant to Illinois law, as Illinois law requires that, whenever possible, a court should construe an arbitration award in a manner that upholds its validity.  *Quick & Reilly, Inc. v. Zielinski*, 306 Ill.App.3d 93 (1999).  In fact, a presumption exists that arbitrators do not exceed their authority, and where an arbitrator is found to have acted in good faith, the arbitration award is deemed conclusive and binding upon the parties.  *Hawrelak, supra,* 316 Ill.App.3d at 179 (emphasis added); *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill.App.3d 100, 106 (1995). Consequently, Illinois courts have held that an arbitrator's award should be upheld whenever possible, and any party seeking to vacate an arbitration award must provide "clear, strong, and convincing evidence that the award was improper." *Hawrelak, supra*, 316 Ill.App.3d at 179, (citing *Canteen Corp. v. Former Foods, Inc.*, 238 Ill.App.3d 167, 179-80 (1992)); *Int'l Ass'n of Firefighters, supra*, 378 Ill.App.3d at 1082.

---

[1]     Ironically, although Respondent argues that the Arbitrator "exceeded his authority" and issued an "irrational ruling" on Rules 2-6, Respondent also contends that the Arbitrator was rational and acting within his authority when he ruled for Respondent in Ruling 1.  By contrast, Petitioner understands and accepts the concept of a "binding" arbitration and does not blindly seek to re-litigate issues it arbitrated but upon which it did not prevail.

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

1    Furthermore, Illinois law provides that "[a] court has no power to determine the

2    merits of the award simply because it strongly disagrees with the arbitrator's contract

3    interpretation" or because it believes the award is "illogical or inconsistent." *Galasso v. KNS*

4    *Cos., Inc.*, 364 Ill. App. 3d 124, 130 (1st Dist. 2006). Rather, a court may vacate the award only

5    if "all fair and reasonable minds would agree" that the arbitrator's decision was "not possible

6    under a fair interpretation of the contract ..." *Rauh v. Rockford Prod. Corp.*, 143 Ill.2d 377, 392

7    (1991). Thus, an award may not be vacated on account of "errors in judgment or mistakes of fact

8    or law," but only where the arbitrator's ruling amounted to a "gross error of law or fact."

9    *Galasso, supra*, 364 Ill. App. 3d at 131.

10    In this case, there is no evidence that the Arbitrator failed to act in good faith, and

11    Respondent has failed to provide "clear, strong, and convincing evidence that the award was

12    improper." *Hawrelak, supra*, 316 Ill.App.3d at 179, (citing *Canteen Corp. v. Former Foods, Inc.*,

13    238 Ill.App.3d 167, 179-80 (1992)). Therefore, the scope of review of the Final Award is limited,

14    and the Final Award cannot be overturned pursuant to the Illinois Uniform Arbitration Act. As

15    such, Petitioner respectfully requests that this Court deny Respondent's Motion, and confirm the

16    Final Award in its entirety.

17    3.    *The Final Award Cannot be Overturned Pursuant to the Parties' Own
            Agreement.*

18

19    Pursuant to the parties' own Agreement, the Final Award is not subject to review

20    in any court, other than to confirm the award. Specifically, Exhibit 5.0, Paragraph 9, of the

      parties' Agreement provides, in pertinent part, "[t]he rulings of the neutral [arbitrator] and the

21    allocation of fees and expenses ***shall be binding, non-reviewable, and non-appealable***." (See

22    Exhibit "A" to Vote Decl., Exhibit 5.0 at 36, ¶9 (emphasis added).)

23    Under Illinois law, "[t]he primary goal in construing a contract is to give effect to

24    the intent of the parties." *Premier Title Co. v. Donahue*, 328 Ill.App.3d 161, 164 (Ill. App. Ct. 2d

25    Dist. 2002) (citing *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34

26    (1993)). "When the language of a contract is clear, a court must determine the intent of the parties

27    solely from the plain language of the contract. The language of a contract must be given its plain

28

13

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1   and ordinary meaning." *Donahue, supra,* 328 Ill.App.3d at 164 (internal citations omitted).   In

2   this case, Exhibit 5.0, paragraph 9, of the parties' Agreement clearly demonstrates an express

3   intent to hold the Arbitrator's award as final and binding upon the parties, without the option for

4   appeal and/or review.   Certainly, the Agreement precludes Respondent's attempt to re-litigate

5   issues upon which it simply did not prevail.   Therefore, the Final Award must be confirmed as

6   binding upon the parties, and Petitioner respectfully requests that this Court deny Respondent's

7   Motion in accordance therewith.

8

9       **D.      Even If The Arbitrator's Award Could Be Reviewed On the Merits, The**

10              **Arbitrator Made A Fair Interpretation of the Agreement And  Did Not Act**
               **Without A Reasonable Basis.**

11              While, as set forth in detail above, the Final Award is not subject to review on the

12  merits, even if it was (which it is not), the Arbitrator's rulings, as found in the Final Award, are

13  inherently fair and reasonable.   First, Respondent has waived its right to challenge, and cannot

14  properly challenge, the Arbitrator's ruling that Respondent must either purchase the minimum

15  requirements going forward, or terminate the agreement.   Secondly, Respondent cannot properly

16  challenge the Arbitrator's decision regarding the proper purchase price for those quantities of

17  CPPU ordered as the Arbitrator's decision was reasonably and rationally made in good faith.   The

18  same is also true for the Arbitrator's decision on Ruling 2.

19          1.      *Respondent Cannot Challenge the Arbitrator's Decision to Require*
                   *Respondent to Purchase the Minimum Requirement or Terminate the*

20                  *Agreement.*

21              First, Respondent attempts to challenge the Arbitrator's ruling on the issue of

22  Respondent's election, the second ruling of the Final Award, which requires Respondent to either

23  purchase the minimum quantities specified in the Agreement going forward, or terminate the

24  Agreement.   However, any such challenge is improperly made as Respondent has waived its right

25  to challenge this ruling, as this ruling, in addition to being part of the Final Award, was in fact

26  arbitrated and rendered as part of the March, 2008 Award.   (Exhibit "B" to Vote Decl., 10:22-

27  10:25.) Here, despite the Arbitrator's reservation of rights to enforce the March, 2008 Award,

28  Respondent failed to challenge the Arbitrator's March, 2008 Award requiring Respondent to elect

14

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1    to purchase those minimum quantities of CPPU specified in the Agreement or terminate the

2    Agreement at any time.  As such, this ruling has been in place and binding on the parties for more

3    than two (2) years, and Respondent has waived its right to challenge the same.

4            In fact, Illinois law provides that, where an application is not predicated upon

5    corruption, fraud or other undue means, an application to vacate an arbitrator's award, or any part

6    thereof, must be made within 90 days of delivery of the award to the application.   710 ILCS

7    5/12(b).  Therefore, having failed to timely and properly challenge the Arbitrator's March, 2008

8    Award with respect to this issue, Respondent cannot now seek to challenge this ruling, and

9    Petitioner respectfully requests that this Court deny Respondent's Motion to Vacate with respect

10   to the Arbitrator's second ruling on this ground.

11           2.    *Even if Respondent Could Properly Challenge Ruling 2 of the Final*
                   *Award, The Arbitrator Made A Reasonable And Rational Interpretation of*
12                 *the Agreement.*

13           Respondent next argues that the Arbitrator exceeded his authority by ignoring the

14   plain and unambiguous language of the Agreement in issuing his Ruling 2 when he concluded

15   Respondent must "elect to proceed under the Agreement and purchase the minimum annual

16   quantities required going forward, or terminate the Agreement for lack of Commercial Viability."

17   (Exhibit "D" to Vote Decl., 6:24-7:3.)

18           Respondent now contends that this Ruling is contrary to the following excerpt of

19   Section 2.2 of the Agreement:

20           "To maintain its exclusive right and license, [VBC] shall fulfill the
             following conditions:
21                              *            *            *
             (c) . . . [VBC] shall purchase from Kim-C1 a minimum quantity of
22           120,000 grams . . . .
                                *            *            *
23           If [VBC] fails to meet the above conditions in the Territory,
             [VBC's] right to sell [CPPU] Products in the territory shall be
24           deemed non-exclusive . . ..

25   (Doc. #35, 11-12.)

26           However, as concluded by the Arbitrator, when read in its entirety, the Agreement

27   is ambiguous.  For instance, Section 2.2 of the Agreement provides that the parties' arrangement

28   shall only become non-exclusive if "such failure [to purchase minimum quantities] does not result

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

15

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1  in whole or in part from . . . lack of Commercial Viability" (Agreement § 2.2 at 7.).  Without

2  revisiting the merits of the Arbitrator's decision, Respondent has acknowledged that its refusal to

3  purchase the requisite minimum quantities of CPPU was due to its "large unused inventory of

4  CPPU."  (Doc. # 35, 4:3-4:5.) Thus, it appears that Respondent dishonored the terms of the

5  Agreement because of a lack of commercial viability.   However, the Agreement does not

6  specifically set forth how to proceed under these circumstances, and as such, the Agreement

7  cannot be considered "unambiguous," as Respondent contends, and the Arbitrator's Ruling is a

8  fair interpretation of the contractual provisions of the parties' Agreement.  *Rauh*, *supra*, 143 Ill.

9  2d at 392.  This is especially true in light of the fact that only Respondent could terminate the

10  Agreement for lack of Commercial Viability, leaving Petitioner without the right to do so.  (See

11  Exhibit "A" to Vote Decl., § 17.3.) Recognizing this ambiguity, at the January 6, 2010 hearing,

12  the Arbitrator stated:

13  
> I'm aware that if you read that paragraph in isolation, that it would
> seem that it contemplates some other kind of relationship.   Yet
14  
> when I look at the history of the negotiations that the parties have
> presented in evidence, the documentation, and I look at the recitals
15  
> at the beginning of the agreement, it appears that the parties were
> always talking about and contemplating an exclusive relationship.
16  
> (Exhibit "C" to Vote Decl., 303:21-304:7.)

17          Simply stated, it would be highly prejudicial to Petitioner to be kept in limbo,

18  while allowing Respondent to refuse to purchase the minimum quantities specified in the parties'

19  Agreement without the requirement that Respondent then termination the Agreement.   Such a

20  provision would not only prevent Petitioner from properly planning for the future, but would also

21  prevent Petitioner from mitigating its damages by negotiating a comprehensive long-term contract

22  with an alternative buyer of the product other than Respondent.   Such an agreement, with an

23  alternative buyer, would require a significant investment in securing regulatory approval for a

24  new formulated product (including a label) by the buyer, setting up formulation and distribution

25  facilities, and making a substantial advertising investment.   (See Exhibit "C" to Vote Decl.,

26  141:1-142:15, 143:1-145:22.) No reasonable buyer of unformulated CPPU is, or would be

27  interested in making this investment while Respondent could still exercise its rights under the

28  Agreement. (See Exhibit "C" to Vote Decl., 140:6-140:22.)

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

1    Moreover, at the 2010 arbitration hearing, Petitioner provided evidence which

2    that, even if the Agreement was terminated, Petitioner was still willing to meet with Respondent

3    and negotiate for the purchase of CPPU.   (See Exhibit "C" to Vote Decl., 116:21-117:10.)  As

4    such, the Arbitrator's decision is inherently fair, and the Arbitrator can only be found to have

5    acted in a reasonable and rational way.

6    Furthermore, the provision of the parties' Agreement regarding commercial

7    viability, allowing Respondent to choose not to purchase the minimum requirements and

8    terminate the Agreement, was only written to allow Respondent such an option.   Under

9    Respondent's argument, Petitioner would be without the option to terminate the contract should

10   Respondent fail to purchase the minimum quantities agreed to.   However, this flies in the face of

11   well-established legal principles and is inherently unfair.   Therefore, this cannot be the meaning

12   of the Agreement, as Respondent contends, and the Arbitrator clearly made a reasonable, rational

13   decision in light of the facts and law before him.  *See, e.g., Rauh*, 143 Ill. 2d at 392 (concluding

14   arbitrator did not exceed authority where interpretation of contract was "a reasonably possible one

15   that [could] seriously be made within the context in which the contract was made"); *Herricane*

16   *Graphics, Inc.*, 354 Ill. App. 3d at 157 (same); *Hayes v. Ennis*, 278 Ill. App. 3d 121, 128-29 (4th

17   Dist. 1996) (finding "no principled way" to inject itself into case, even if court disagrees with

18   arbitrator's assessment relating to an undefined contract term).

19        3.   *Ruling 2 Is Not Facially Contradictory to Ruling 1.*

20   Next, in its attempt to overturn the Arbitrator's second ruling, Respondent

21   contends that the Arbitrator's first and second rulings are contradictory on their face.  (Doc. #35,

22   11:3-11:9.)  However, these two (2) rulings are easily reconciled as they address different subject

23   matters—(i) whether Respondent breached the *prior award* by failing to purchase the requisite

24   minimum quantity of CPPU; and (ii) whether Respondent breached the *Agreement* by failing to

25   purchase the requisite minimum quantity of CPPU.

26   Ruling 2 instructs Respondent how to act under the Agreement going forward,

27   demanding that Respondent choose between either purchasing the minimum amount of CPPU or

28   terminating the Agreement.  By contrast, Ruling 1 addresses whether Respondent should be held

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

17

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

liable for breaching the terms of the prior award.  As the Arbitrator noted, and Respondent concedes, the previous March, 2008 Award "didn't consider the issue of exclusivity or non-exclusivity." (Exhibit "C" to Vote Decl., 302:1-302:5.) Moreover, as previously noted, the Agreement does not clearly define the circumstances that render the contract non-exclusive. Thus, the two (2) rulings reflect the fact that the Arbitrator realized that it would be inequitable to hold Respondent accountable for violating an aspect of the Agreement that the arbitrator had not yet addressed, and the Arbitrator ruled on each issue accordingly.  As such, Ruling 1 forgives Respondent for acting in a manner it believed to be lawful, while Ruling 2 clarifies how Respondent must act in accordance with the Agreement going forward.  Therefore, the two (2) rulings are clearly reconcilable and should be upheld.  Moreover, even if this Court were to find Ruling 2 inconsistent with Ruling 1, inconsistency alone is not a sufficient basis to vacate the Arbitrator's second ruling.  *See, e.g., Galasso, supra,* 364 Ill. App. 3d at 130.    Therefore, Petitioner respectfully requests that this Court deny Respondent's Motion in this regard.

4.    *Ruling 2 Is Not Irreconcilable with "Undisputed Facts" And Prior Admissions are Not a Basis for Vacating an Arbitration Award.*

Finally, Respondent provides three (3) bullet point citations to the record of the arbitration hearings and contends that these citations are "undisputed facts," which mean that the Arbitrator could not have held as he did on Ruling 2.  However, these "undisputed facts" really amount to "admissions" made by Petitioner at the arbitration hearings, and under Illinois law, Petitioner's alleged prior admissions are not a basis for vacating an arbitration award.  See *Tim Huey Corp. v. Global Boiler & Mech., Inc.,* 272 Ill.App.3d 100, 108-109 (4th Dist. 1995). Respondent, however, ignores this fact, and cites, instead, to two (2) Ninth Circuit cases, *Coutee v. Barington Capital Group, L.P.,* 336 F.3d 1128, 1133 (9th Cir. Cal. 2003) and *American Postal Workers Union v. United States Postal Serv.,* 682 F.2d 1280, 1284-86 (9th Cir. 1982), which are inapplicable to this case as dealing with undisputed, "legally dispositive" facts, not alleged admissions. See, e.g., *Coutee, supra,* at 1133*; American Postal Workers, supra,* at 1284.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

18

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1   Rather, the holdings of the court in *Tim Huey*, *supra*, provide the law applicable to

2   Respondent's contention.  In *Tim Huey*, *supra*, the court considered a plaintiff's argument that the

3   arbitrator exceeded his authority by awarding less in damages than the defendant admitted was

4   appropriate in his post-arbitration brief.   However, the court refused to vacate the award on

5   account of this admission, noting that it would be improper to "inject" itself into the prior

6   arbitration proceedings, and reasoning that it "should not concoct some reason to review

7   arbitration awards we do not like[.]"  *Id.*

8   Just as in *Tim Huey*, *supra*, any purported "admissions" made by Petitioner

9   during the course of the arbitration proceedings are not a basis for revisiting the merits of the

10  Final Award.   Moreover, Respondent's citations to the testimony of Bruce Brown for the

11  statement that Respondent's failure to purchase the minimum quantities rendered the license non-

12  exclusive does not, as Respondent would suggest, leave Petitioner with no recourse whatsoever

13  and require the Arbitrator to adopt its proposed ruling on the second issue.  Rather, this testimony

14  simply provides that, upon Respondent's failure to purchase the minimum requirements set forth

15  in the parties' Agreement, the license agreement becomes non-exclusive, and leaves open the

16  question of what remedies are available to Petitioner.   Indeed, as Mr. Brown testified, "Yes

17  …they can go nonexclusive. The issue is *how* they go." (Exhibit "C" to Vote Decl., 111:6-111:8

18  (emphasis added.)   Consequently, Ruling 2 is not irreconcilable with "undisputed facts," as

19  contended by Respondent, and this Court should reject Respondent's attempts to contort the

20  testimony of Mr. Brown.

21          5.      *The Arbitrator's Decision Regarding the Purchase Price of CPPU is also*
22                  *Inherently Fair and Reasonable.*

            Finally, Respondent incorrectly argues that the Arbitrator disregarded his own

23  mathematical formula by finding (1) that the correct purchase price for those quantities of CPPU

24  purchased by Respondent in 2008 was $8.83 per gram; and (2) that the correct purchase price for

25  those quantities of CPPU purchased by Respondent in 2009 was $9.34 per gram.  (See Doc. # 35,

26  17-18.)  These were the prices urged by Petitioner.

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

19

1    Specifically, Respondent argues that the transfer price should have been calculated

2    based on 35% of the net distributor price.  (*Id.*)  However, under both the Agreement and the

3    March, 2008 Award, the application of this formula presupposes an exclusive distributor

4    relationship between Petitioner and Respondent, and as Respondent concedes, no such exclusive

5    relationship exists.

6    Rather, under the terms of Ruling 1—which Respondent does not challenge—

7    Respondent's failure to purchase the minimum quantities required amount in both 2008 and 2009

8    created a non-exclusive relationship.  At this point, under the terms of the Agreement, Petitioner

9    can only be considered its own distributor of CPPU, and as such Respondent's purchases must be

10   based on the price that Petitioner set.  Any other conclusion would put Petitioner at a crippling

11   commercial disadvantage, since Respondent had artificially lowered the price of CPPU to

12   stimulate demand and only Respondent had the right to terminate the Agreement for lack of

13   commercial viability. (See Exhibit "C" to Johnson Decl, VBC Pre-Hearing Brief, p. 4; Exhibit

14   "A" to Vote Decl., § 17.3.)  Moreover, it makes no sense for Respondent, as a customer, to have

15   the power to set the price at which the seller, Petitioner, is able to sell its own product.  This is

16   especially true where the parties were in a non-exclusive relationship, as this would inhibit

17   Petitioner's ability to reasonable forecast its own income and recoup its costs.

18   Recognizing the possibility of this anomalous result, the Arbitrator noted:

19   The price that was set in the prior arbitration award is a price that
     does not exceed 35 percent of VBC's net distributor's price.  Does
20   that apply to the nonexclusive relationship?  And where do I go in
     the agreement so that it can be interpreted so as to give meaning to
21   all the various parts of the agreement?  If the agreement never
     contemplated anything other than an exclusive relationship, do both
22   the quantity and pricing provisions go away if VBC elects to
     become non-exclusive?
23

24   If the agreement never contemplated anything other than an
     exclusive relationship, do both the quantity and the pricing
25   provisions go away if VBC elects to become nonexclusive?

26   (Exhibit "C" to Vote Decl., 304:21-305:9.)  As such, the Arbitrator did not fail to follow the

27   "bind, unambiguous formula under the undisputed facts," as contended by Respondent (Doc. 3

28   35, 18:8-18:10), and the Arbitrator correctly understood that Respondent cannot have its cake and

20

1   eat it too by neglecting to purchase the requisite minimum quantities of CPPU, while still

2   demanding to pay a fraction of its own distribution price.

3           In fact, Petitioner offered evidence at the hearing that it is unheard of in the

4   agricultural-chemical business for the customer to set the transfer price in a non-exclusive

5   business relationship (Exhibit "C" to Vote Decl., 130), and Respondent failed to rebut and/or

6   provide any evidence that it has, or has ever had, any non-exclusive contract in which the

7   customer had the ability to control the quality and/or price of the product sold by the seller. (See

8   Exhibit "C" to Vote Decl., 321:19-322:2.)   Likewise, at the arbitration, Petitioner presented

9   evidence from a witness with 40 years of experience in the agriculture-chemical business who

10  testified that he knows of no instance, and has never seen any agreement, in which a non-

11  exclusive customer was able to control the purchase price of the product based on its sales to

12  someone else. (See Exhibit "C" to Vote Decl., 125:16–20 [Q. "Are you aware of contracts in the

13  industry where a nonexclusive buyer of a product is given the right to set the price at which that

14  buyer buys the product?" A. "Never."] and 130:4-8 [Q. "In your 40 years in the ag chem business,

15  had you had any nonexclusive customers ever indicate that their purchase price from you was

16  based on a percentage of what they sold to somebody else for?" A. "No."].)   Thus, while the

17  Agreement could reasonably be read to allow Respondent to use its net distributors pricing to set

18  a cap on the transfer price from Petitioner to Respondent where the parties are in an exclusive

19  relationship, the same is not true where the parties are in a non-exclusive relationship and

20  Respondent has failed to purchase the minimum quantities specified in the Agreement.

21  Consequently, the Arbitrator did not exceed his authority in finding (1) that the correct purchase

22  price for those quantities of CPPU purchased by Respondent in 2008 was $8.83 per gram; and (2)

23  that the correct purchase price for those quantities of CPPU purchased by Respondent in 2009

24  was $9.34 per gram. See *Galasso, supra,* 364 Ill. App. 3d at 134 (rejecting argument that

25  arbitrator exceeded authority because he disagreed with mathematical calculations proposed by

26  party seeking to vacate award).   Rather, the Arbitrator can only be found to have acted in good

27  faith, and Rulings 3 and 4 are inherently fair and reasonably and rationally made.   As such,

28  Respondent's Motion must be denied

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

**E.**     **Petitioner Remains The Prevailing Party And Is Entitled To An Award Of Attorney's Fees & Costs.**

Finally, Respondent challenges Rulings 5 and 6, in which the Arbitrator found Petitioner to be the prevailing party in the arbitration, based on its challenge to Rulings 2-4. However, as set forth above, Respondent challenge to Rulings 2, 3 and 4 are of no avail. Consequently, Petitioner remains the prevailing party in the arbitration.

Paragraph 8 of Exhibit 5.0 to the parties' Agreement specifically provides for the award of attorney's fees, as follows:

> The neutral shall be paid a reasonable fee plus expenses. These fees and expenses, along with the reasonable legal fees and expenses of the prevailing party (including all expert witness fees and expenses), the fees and expenses of a court reporter, and any expenses for a hearing room, shall be paid as follows...
>
> ***
>
> (b)     If the neutral rules in favor of one party on some issues and the other party on other issues, the neutral shall issue with the rulings a written determination as to how such fees and expenses shall be allocated between the parties. The neutral shall allocate fees and expenses in a way that bears a reasonable relationship to the outcome of the ADR, with the party prevailing on more issues, or on issues of greater value or gravity, recovering a relatively larger share of its legal fees and expenses.

(See Exhibit "A" to Vote Decl., Exhibit 5.0 at 35-36, ¶8.) Moreover, Paragraph 9 to Exhibit 5.0 specifically provides that the Arbitrator's allocation of fees and expenses is binding on the parties. (See Exhibit "A" to Vote Decl. Exhibit 5.0, ¶9.)

Here, in his Final Award, the Arbitrator found Petitioner the prevailing party in the litigation, and awarded Petitioner $25,542.05 in reasonable attorney's fees and expenses.   In Illinois, attorney fee provisions in a contract are to be enforced as long as the fees are reasonable. *Collins v. Hurst,* 316 Ill.App.3d 171 (2000).   Further, as set forth above, the plain language of a contract must be given its ordinary meaning and held to effectuate the parties' intent. *Donahue, supra,* 328 Ill.App.3d at 164 (internal citations omitted).

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB

1    Furthermore, 710 ILCS 5/14 provides that the costs of an application and

2  proceeding to enter and enforce an arbitrator's judgment are awardable as the court deems just,

3  and this case, Petitioner is entitled to an award of reasonable attorney's fees and costs incurred in

4  the attempting to enforce the Arbitrator's Final Award, as, to date, Petitioner has been forced to

5  filed not only a Petition and Amended Petition to Confirm the Arbitration Award in this Court,

6  but also to challenge and oppose a Complaint, Amended Complaint and Motion to Vacate

7  Arbitration Award improperly filed by Respondent in the Illinois Circuit Court, in order to

8  enforce the Final Award.  However, as found by the Illinois Circuit Court and set forth above,

9  these filing were improperly and inappropriately made by Respondent.  Therefore, Petitioner

10  should be awarded, and respectfully requests, an award of reasonable attorneys fees and costs

11  incurred in enforcing the Final Award, to be determined by Motion.

12

13                              **IV.**
                        **CONCLUSION**
14
             For all of the foregoing reasons, as well as for those to be set forth at the hearing
15
   on this matter, Petitioner respectfully requests that this Court deny Respondent's Motion to
16
   Vacate Arbitration.
17

18  Dated: July 12, 2010                          Respectfully submitted,

19                                          McCORMICK, BARSTOW, SHEPPARD,
                                                 WAYTE & CARRUTH LLP
20

21
                                          By:_____/s/_____
22                                                     Kurt F. Vote
                                                 Attorneys for Petitioner
23                                                      KIM-C1

24

25

26  1585447.v1

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD
1:10-CV-00591 AWI DLB